UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**JUDY A.,**

    **Plaintiff,**

                                  **Case No. 2:20-cv-4255**

    v.                              **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

    **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Judy A. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying her application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On May 17, 2016, Plaintiff filed an application for benefits, alleging that she has been disabled since April 27, 2016.[2] R. 246–52. The application was denied initially and upon reconsideration. R. 168–72, 174–79. Plaintiff sought a *de novo* hearing before an administrative

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.
[2] Plaintiff later amended the disability onset date to December 30, 2016, her fiftieth birthday. R. 93–96.

1

law judge. R. 180–82. Administrative Law Judge Leonard Olarsch ("ALJ Olarsch") held a hearing on September 12, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 90–135. In a decision dated February 7, 2019, Administrative Law Judge Scott Tirrell ("ALJ Tirrell")[3] concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 29, 2016, the alleged disability onset date, through the date of that decision. R. 10–20. That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on February 14, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 24, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 6.[4] On the same day, the case was reassigned to the undersigned. ECF No. 7. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

---

[3] ALJ Tirrell issued "a decision on this case in accordance with Hallex I-2-8-40 B due to the unavailability of the Administrative Law Judge [ALJ Olarsch] who conducted the hearing." R. 10.

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

5

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. R. 12. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between her alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: tendinitis of the left wrist; synovitis of the right hand and wrist; obesity; bipolar disorder; generalized anxiety disorder; cyclothymic disorder; and personality disorder. *Id*. The ALJ also found that the following impairments were not severe: status post breast cancer surgery with lymph node removal; hypertension, migraine headaches, GERD, and vitamin D deficiency. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 13–14.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 14–18. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a mechanical assembler. R. 18.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 100,00 jobs as an inspector packer; approximately 30,00 jobs as a small parts assembler; approximately 110,00 jobs as a ticketer—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 19. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from her alleged disability onset date through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 19; *Plaintiff's Reply Brief*, ECF No. 21. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 20.

## IV. RELEVANT MEDICAL EVIDENCE

On October 19, 2017, Plaintiff's treating psychiatrist, Adnan Khan, M.D., completed a two-page, fill-in-the-blank, and check-the-box form regarding Listing 12.04, which addresses depressive, bipolar, and related disorders. R. 476–77 (Exhibit 18F). Dr. Khan checked the box marked "Present" for the following symptoms: Depressed mood; diminished interest in almost all activities; sleep disturbance; and feelings of guilt or worthlessness. R. 476. Dr. Khan opined that Plaintiff had "Marked" functional limitations in her abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt and manage herself. R. 477. When addressing whether Plaintiff's mental disorder was "serious and

persistent," *i.e.*, that she had a medically documented history of the existence of the disorder over a period of at least two years, Dr. Khan marked the boxes "Present" in response to whether "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder" and "[m]arginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life[.]" *Id.* Dr. Khan indicated that he had treated Plaintiff from August 14, 2104, to the date on which he completed the form, October 19, 2017. *Id.* Dr. Khan further noted that the earliest onset of Plaintiff's condition was January 2014. *Id.* Finally, Dr. Khan opined that Plaintiff's condition was expected to persist for at least a year from its onset date. *Id.*

## V. DISCUSSION

Plaintiff challenges the ALJ's consideration of multiple medical opinions including, *inter alia*, the opinion of her treating psychiatrist, Adnan Khan, M.D. *Plaintiff's Brief*, ECF No. 19, pp. 19–23; *Plaintiff's Reply Brief*, ECF No. 21, pp. 3–5. Plaintiff's arguments are well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the

9

medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship

and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform light work subject to certain additional exertional and non-exertional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant is limited to lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; standing and walking for six hours in an eight hour workday; sitting for six hours in an eight hour day; frequent fingering and handling; performance of simple, routine, and repetitive tasks; occasional interaction with supervisors, coworkers, and the public. The claimant is unable to work in tandem with coworkers.

R. 14. In reaching this determination, the ALJ, *inter alia*, assigned "little weight" to Dr. Khan's opinions, reasoning as follows:

11

> In October 2017, the claimant's treating physician, Dr. Adnan [sic], completed a medical source statement (Ex. 18F). Dr. Adnan stated that the claimant experiences depressed mood, diminished interest in activities, sleep disturbance, and feelings of guilt or worthlessness (Id. at 1). He opined that since January 2014 the claimant has marked limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Id. at 2). *Little weight is given to this opinion because there are no treatment records from Adnan* nor any corroborating evidence that would indicate these impairments have been disabling since 2014.

R. 17 (emphasis added).

Plaintiff challenges, *inter alia*, the ALJ's consideration of Dr. Khan's opinions, arguing that the ALJ erroneously referred to Dr. Khan by the wrong name, *i.e.*, "Dr. Adnan," and thereby erroneously concluded that there were no supporting treatment records from Dr. Khan, which support his opinions. *Plaintiff's Brief*, ECF No. 19, pp. 19–23; *Plaintiff's Reply Brief*, ECF No. 21, pp. 3–5. This Court agrees. The ALJ failed entirely to acknowledge years of treatment notes dating back to May 2015 from Dr. Khan, which reflect his examination findings and which arguably support some or all of his opined mental limitations. R. 379–88, 406–11, 452–71. For example, on May 25, 2016, Dr. Khan noted that Plaintiff "had a breakdown at appointment. Mood has been very depressed. Tearful and very anxious. Feels worthless and experienced suicidal ideation" and "[b]oth suicidal and ideas and intentions are present[,]" R. 462; Plaintiff was admitted to a psychiatric inpatient hospital on the same day with complaints of "I just feel hopeless. I can't live like this anymore[,]" R. 406–11, and Dr. Khan observed attention difficulties in 2015, R. 382–83, 385.

As previously discussed, an ALJ cannot reject evidence for the wrong reason. *See Sutherland* 785 F. App'x at 928; *Cotter*, 642 F.2d at 706–07. In the case presently before the Court, the Court cannot conclude that substantial evidence supports the ALJ's rejection of Dr. Khan's opinions, particularly where the mental limitations found by Dr. Khan are inconsistent

12

with the RFC found by the ALJ and where it is unclear to what extent this error infected the ALJ's determination of Plaintiff's RFC. R. 14–18. Thus, the Court cannot meaningfully review the ALJ's RFC finding and determine whether substantial evidence supports that finding at step four. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at \*6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis."); *Gonzalez v. Comm'r of Soc. Sec.*, No. CV 17-5131, 2018 WL 5307818, at \*1–2 (D.N.J. Oct. 26, 2018) (remanding action where "[t]he ALJ overlooked this significant medical evidence from a treating physician" and that evidence is inconsistent with the ALJ's RFC that the plaintiff could perform sedentary work); *Wells v. Acting Comm'r of Soc. Sec.*, No. CV 15-6048, 2016 WL 6824369, at \*4 (D.N.J. Nov. 18, 2016) (remanding action where "the decision does not provide the detail or clarity required for the Court to review the ALJ's reasoning. This is especially problematic in regards to a treating physician's opinion, because such opinions presumably receive more weight absent inconsistency with other evidence of record") (citing 20 C.F.R. § 404.1527(c)(2)); *cf. Fargnoli*, 247 F.3d at 42 ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation for the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided.").

      Defendant contends that there is other evidence in the record that undermines Dr. Khan's findings of functional limitations and that, in any event, the ALJ specifically stated that he considered the "entire record" and that the Court should take him at his word in this regard.

13

*Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20, pp. 11–12 n.3. Defendant's arguments are not well taken. As a preliminary matter, although the ALJ stated that he considered the "entire record[,]" R. 14, this statement cannot erase the ALJ's express–and erroneous–finding that "there are no treatment records from" Dr. Khan, R. 17. Moreover, although Defendant points to evidence in the record that she believes undermines Dr. Khan's findings, the ALJ did not rely on this rationale in evaluating Dr. Khan's opinions, nor did he articulate this basis for assigning little weight to Dr. Khan's opinions. R. 17. The Court therefore rejects the Commissioner's *post hoc* rationalization in this regard. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

      This Court concludes that remand of the matter for further consideration is appropriate even if, upon further examination of these issues, the ALJ again determines to assign "little weight" to Dr. Khan's opinions and concludes that Plaintiff is not entitled to benefits. That determination is for the Commissioner—not this Court—to make in the first instance. *Cf.*

14

*Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of these issues.[5]

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

---

[5] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Khan's opinions and the RFC, the Court and does not consider those claims. However, on remand, the Court encourages the ALJ to more fully address the limitations identified by Plaintiff's husband in his Third Party Function Report, R. 293–300, and clarify to which of those limitations the ALJ assigns "[s]ome weight[.]" R. 16.

15

**IT IS SO ORDERED.**

Date:  October 12, 2021              <u>     *s/Norah McCann King*          </u>
                                         NORAH McCANN KING
                                  UNITED STATES MAGISTRATE JUDGE